# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

NEDRA JOHNSON

Plaintiff(s),

*-against-*

CENTENE MANAGEMENT COMPANY LLC

Defendant(s).

Index No.

# Summons

Date Index No. Purchased: October 9, 2026

To the above named Defendant(s)

CENTENE MANAGEMENT COMPANY LLC
C T Corporation System
28 Liberty Street, New York, NY 10005

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is CPLR Section 503(a)
which is because Plaintiff resides in KINGS County

Dated: October 9, 2026

HARRISON, HARRISON & ASSOCIATES

by *David Harrison*
David Harrison, Esq.
Attorneys for Plaintiff

HARRISON, HARRISON & ASSOCIATES
Julie Salwen, Esq.
David Harrison, Esq.
jsalwen@nynjemploymentlaw.com
dharrison@nynjemploymentlaw.com
10 State Highway 35, Suite #10
Red Bank, NJ 07701
(718) 799-9111 Phone

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

NEDRA JOHNSON,

Plaintiff,

- against -

CENTENE MANAGEMENT COMPANY LLC,

Defendant.

Index No.

**VERIFIED COMPLAINT**

**Jury Trial Demanded**

Plaintiff Nedra Johnson, ("Plaintiff"), by and through counsel, alleges upon information and belief, except as to the allegations that pertain to Plaintiff which are alleged upon personal knowledge, as follows:

## INTRODUCTION

1. This action arises out of Defendant Centene Management Company LLC's ("Defendant" or "Centene") retaliation against Plaintiff because of her use of legally protected absence to care for her son who suffers from a serious medical condition in violation of section 215 of the New York Labor Law ("NYLL").

2. Furthermore, Defendant violated the New York City Human Rights Law ("NYCHRL") by discriminating against Plaintiff based on her caregiver status and association with her son who has a disability.

3. Plaintiff seeks economic and emotional distress damages, statutory liquidated damages, punitive damages, pre and post judgment interest, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's claims because Defendant has an office and does business in the State of New York.

5. Venue is proper in this Court pursuant to C.P.L.R. § 503(a) because Plaintiff resides in the County of Kings in the State of New York.

## PARTIES

6. Plaintiff Nedra Johnson is an individual who resides in the County of Kings in the State of New York.

7. Plaintiff began her employment with Defendant as a Customer Service Mainline, Medicaid, working for Fidelis Care, on November 7 2016, and continued her employment with Defendant after Centene acquired Fidelis Care in 2018 until Defendant terminated her employment effective November 5, 2025.

8. During the nine years that Plaintiff worked for Defendant she worked hard and her work was recognized with promotions – culminating in the position of Managed Care Coordinator – and yearly raises.

9. Defendant Centene Management Company LLC ("Defendant" or "Centene") is a Foreign Limited Liability Company, organized under the laws of the State of Wisconsin.

10. The registered address to which the New York Secretary of State shall mail a copy of any process against Centene is C T Corporation System, 28 Liberty Street, New York, NY 10005.

## FACTS

11. Defendant Centene is a subsidiary of Centene Corporation, "the nation's largest managed care company focused on underserved populations."[1]

12. On its website, Centene Corporation states that its "mission is focused on helping people live healthier lives. For 40 years, our company has worked tirelessly to increase access to affordable, quality-focused healthcare to those who need it most."[2]

13. In her role as a Managed Care Coordinator, Plaintiff called a list of members assigned to her monthly, took calls from her assigned members, and assisted these members with their needs that were not clinical. In this role, she was paired with a nurse who dealt with the members' clinical matters.

14. Plaintiff loved her job. She loved helping the elderly and disabled who comprised Defendant's membership.

15. Plaintiff's son has a disability that at times results in medical crises and hospitalizations.

16. In 2025, Plaintiff's son experienced numerous medical crises and hospitalizations that forced Plaintiff to take family leave to care for her son.

17. Plaintiff communicated with her supervisor each time that she needed family leave to care for her son.

18. In addition, Plaintiff provided all the necessary documentation to Lincoln Financial Group ("Lincoln")—Defendant's agent for approval and payment of leave pursuant to FMLA and New York Paid Family Leave ("PFL")—and Lincoln approved each of her requests for leave.

---

[1] Centene Corporation Form 10-K, Feb. 17, 2026 (available at https://investors.centene.com/all-filings?o=50).

[2] https://www.centene.com/ (accessed 9/2/2026).

19. Although New York State law protects employees who need to take PFL leave to care for a family member, Plaintiff's supervisor showed her displeasure with Plaintiff's absences by asking the nurse assigned to work with Plaintiff how it felt to work with someone who was always taking leave. The manner in which the question was asked made it clear that she expected the nurse to complain about Plaintiff's need for leave to care for her son.

20. On August 20, 2025, Plaintiff's supervisor and her supervisor's supervisor met with her and put her on a Performance Improvement Plan ("PIP").

21. That the PIP was pretextual was shown, among other things, by the fact that Plaintiff was on leave on more than one third (7 out of 19) of the dates on which Defendant claimed that she had received coaching.

22. Furthermore, Plaintiff's supervisor made impossible demands for her to perform more than the written requirements of the PIP—in order to be considered to have met the goals of the PIP.

23. For example, the PIP required Plaintiff to record twenty to twenty-five actions daily, including taking incoming calls, communicating with vendors, making outgoing calls, etc. In contrast to the plain written language of the PIP, Plaintiff's supervisor told her that each day – in addition to other work – in order to the PIP's goals, she was required to make twenty to twenty-five outgoing calls to the members that were assigned to her.

24. It was impossible for Plaintiff to make twenty to twenty-five outgoing calls to the members that were assigned to her daily because Defendant had decreased the number of members assigned to Plaintiff to sixty-three from her original case load of around 300 members. Calling the members every few days without a reason for the call would be considered harassment.

25. The purpose of the PIP was to pretextually provide documentation in order to terminate Plaintiff because she had taken protected leave to care for her son and was associated with and a caregiver for her son, not to help her improve her work performance.

26. Effective November 5, 2025, Defendant terminated Plaintiff's employment in retaliation for her use of PFL to care for her son.

27. Moreover, Defendant's termination of Plaintiff's employment was discriminatory based on her caregiver status and association with her son who has a disability.

28. Defendant's retaliation and discrimination against Plaintiff caused Plaintiff significant emotional distress. Plaintiff had loved her job, but now, almost one year after her termination, Plaintiff tears up when thinking of how Centene treated her because she has a son with a disability and needed to take leave to care for him.

29. In addition to the emotional distress, Plaintiff has suffered financially as a result of Defendant's illegal acts.

**FIRST CLAIM FOR RELIEF**
**(NYLL § 215 – Retaliation for Using Legally Protected Absence)**

30. Plaintiff realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

31. It is unlawful under New York law for an employer to retaliate against an employee "because such employee has used any legally protected absence pursuant to federal, local, or state law." (NYLL § 215(1)(a)(vii).

32. As detailed above, Defendant retaliated against Plaintiff and terminated her employment for pretextual reasons because she took protected New York Paid Family Leave to care for her son's serious medical condition.

33. Defendants illegal actions were willful.

34. As a direct and proximate result of Defendants' willful unlawful conduct, as set forth herein, Plaintiff has sustained damages, including emotional distress and loss of earnings, in an amount to be established at trial.

35. Plaintiff seeks an award of lost pay and emotional distress damages, reinstatement into her position or an award of front pay, statutory liquidated damages, pre-judgment interest at the statutory rate, attorneys' fees and costs, pursuant to the NYLL, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(NYCHRL – Caregiver and Associational Disability Discrimination )**

36. Plaintiff realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

37. The NYCHRL prohibits discrimination based on an employee's relationship or association with a person who has an actual or perceived disability. (N.Y.C. Admin. Code § 8-102(20).)

38. Furthermore, the NYCHRL prohibits discrimination based on an employee's caregiver status as that term is defined in the statute. (N.Y.C. Admin. Code § 8-107(1)(a).)

39. Plaintiff's son has a disability as defined by the NYCHRL. (N.Y.C. Admin. Code § 8-102.)

40. As detailed above, Plaintiff provides medical care for her son when his disability and serious medical condition require that care.

41. As detailed above, Defendant discriminated against Plaintiff and terminated her employment because of her caregiver status and association with her son who has a disability.

42. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained damages, including emotional distress and loss of earnings, in an amount to be established at trial.

43. Plaintiff seeks damages for her lost wages and emotional distress, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs, including expert fees, pursuant to § 8-502 of the NYCHRL, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

1. An award of economic and emotional distress damages;
2. Statutory liquidated damages, as well as punitive damages;
3. Costs of action incurred herein, including expert fees;
4. Attorneys' fees;
5. Pre-Judgment and post-judgment interest, at the New York statutory rate; and
6. Such other legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and claims with respect to which she has a right to a jury trial.

Dated: October 9, 2026

Respectfully submitted,

HARRISON, HARRISON & ASSOCIATES

David Harrison

/s/ David Harrison

David Harrison
dharrison@nynjemploymentlaw.com
Julie Salwen

jsalwen@nynjemploymentlaw.com
90 Broad Street
New York, NY 10004
(718) 799-9111Phone
(718) 799-9171 Fax
*Attorneys for Plaintiff*

**VERIFICATION**

David Harrison, being duly sworn, deposes and says:

I am Plaintiff's attorney in the above-entitled action. I have read the foregoing complaint and know the contents thereof and that the same is true to the best of my knowledge, except as to those matters therein stated to be alleged upon information and belief and as to those matters I believe them to be true.

Dated: October 9, 2026

David Harrison
/s/David Harrison
David Harrison, Esq.

This verification is signed by Plaintiff's attorney pursuant to § 3020(d)(3), as Plaintiff does not reside in the county where the attorney has his office.